```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

JAMES LAGACE,                     :
                                  :
    Plaintiff,                    :
                                  :
    v.                            :       CASE NO. 3:06CV1317(RNC)
                                  :
NEW ENGLAND CENTRAL RAILROAD,     :
                                  :
    Defendant.                    :

### SECOND ORDER ON PLAINTIFF'S MOTION TO COMPEL

Pending before the court is the plaintiff's Motion to Compel, doc. #22.[1]  The plaintiff seeks to compel the disclosure of fourteen items listed on the defendant's Amended Privilege Log (doc. #26, App. D at 6).  The defendant claims that these items are protected by the work product doctrine.  The plaintiff's motion is granted in part and denied in part, as set forth herein.

### I.  Factual Background

The defendant operates a railroad between New London, Connecticut and East Alburg, Vermont.  (Compl., ¶ 5.)  The plaintiff was employed by the defendant as a conductor and was

---

[1] The court heard oral argument on the plaintiff's motion on April 10, 2007 and subsequently entered a partial ruling as to some of the disputed requests (namely Production Requests #6, 7, 12, 18, 19, 21, 32, 35 and 41 and Interrogatory #1).  The defendant represented at oral argument that it objects to the remaining disputed items only insofar as they seek production of documents on the defendant's Amended Privilege Log (doc. #26, App. D at 6).  The parties were ordered to file supplemental briefs specifically discussing the applicability of the work product doctrine to the documents on the Amended Privilege Log.

injured at the defendant's facility in Palmer, Massachusetts on November 28, 2005,. (Id., ¶¶ 7-8, 10.)  According to plaintiff's Motion to Compel, the plaintiff suffered a crush injury to his left foot and is permanently disabled from his occupation as a conductor.  (Doc. #23 at 2.) The plaintiff brings this action under the Federal Employers' Liability Act (FELA), 49 U.S.C. § 51, *et seq*. and certain other statutory provisions.[2]

The documents at issue were created by and/or were communications among the defendant's employees, defense counsel, and/or an entity called Railroad Risk Management, Inc. ("RRMI"). The defendant has submitted an affidavit from its in-house counsel, Daniel A. Hershman.[3] (Doc. 26, App. J.)  Mr. Hershman states that when an accident occurs, he has primary responsibility for deciding whether the accident or injury may give rise to litigation.  (Id., ¶7.)  Mr. Hershman avers that on November 28, 2005, the day of plaintiff's injury, he hired defense counsel to protect the defendant's interests and prepare for litigation. (Id., ¶9.)  On that same date, defense counsel hired RRMI to assist in preparing for litigation. (Id., ¶10.)

---

[2] In addition to FELA, the complaint references the Boiler Inspection Act, 42 U.S.C. § 20701, and the Safety Appliance Act, 42 U.S.C. § 20302.

[3] Mr. Hershman is actually employed by RailAmerica, Inc., a holding company whose subsidiaries include the defendant. (Hershman Aff., ¶ 5.) RailAmerica, Inc. provides legal services to its constituent companies.  (Id., ¶6.)

2

According to the affidavit, RRMI is "only hired to investigate accidents or injuries when there is a strong likelihood that litigation will occur and RRMI is hired solely to assist defense counsel in preparing for litigation. (Id., ¶11.)  Mr. Hershman further states that the documents in the Amended Privilege Log were not created in the ordinary course of business but in anticipation of litigation. (Id., ¶¶12-13.)

The documents include emails regarding the status of the plaintiff's medical condition, witness statements, and other communications.  Perhaps most significant is an investigative report which includes the results of a reenactment of the accident conducted by the defendant and RRMI the day after the accident occurred.  This reenactment was apparently conducted using the same locomotive and boxcar, at the same site, and with some of the same personnel involved.  The plaintiff contends that he has no ability to conduct a similar reenactment of his own, because the defendant did not own the boxcar at issue and therefore cannot produce it to the plaintiff for investigation.

II. Work Product Doctrine

Work product issues are governed by federal law.[4]  EDO Corp. v. Newark Ins. Co., 145 F.R.D. 18, 21 (D. Conn. 1992).  "The work product doctrine is distinct from and broader than the

---

[4]The defendant does not claim that the attorney-client privilege applies to any of the documents on the privilege log.

3

attorney-client privilege." United States v. Nobles, 422 U.S. 225, 238 n. 11 (1975) (citing Hickman v. Taylor, 329 U.S. 495, 508 (1947)). The work product doctrine shields from disclosure documents and other materials prepared in anticipation of litigation or trial by a party or a party's representative, absent a showing of substantial need and the inability to obtain the substantial equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3); see also In re Grand Jury Subpoenas Dated Oct. 22, 1991 and Nov. 1, 1991, 959 F.2d 1158, 1166 (2d Cir. 1992). The doctrine extends to notes, memoranda, correspondence, witness interviews, and other materials, whether they are created by an attorney or by an agent for the attorney. See United States v. Nobles, 422 U.S. 225, 238-39 (1975); Carter v. Cornell Univ., 173 F.R.D. 92, 95 (S.D.N.Y. 1997).

"Three conditions must be met to earn work product protection. The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." Sicurelli v. Jeneric/Pentron Inc., No. 03-CV-4934 (SLT)(KAM), 2006 U.S. Dist. LEXIS 29813, *5 (E.D.N.Y. May 16, 2006) (internal citations and quotation marks omitted). The burden of establishing all three elements of the work product privilege rests with the party invoking the privilege. Id.

"Where a document was created because of anticipated

litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3)." United States v. Adlman, 134 F.3d 1194 (2d Cir. 1998).

"Even where the applicability of the work product doctrine has been established, factual material may be ordered produced upon a showing of substantial need and inability to obtain the equivalent without undue hardship." Sicurelli, 2006 U.S. Dist. LEXIS 29813 at *7 (internal citations and quotation marks omitted).[5] "A substantial need for work product materials exists where the information sought is 'essential' to the party's defense, is 'crucial' to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues." Strauss v. Credit Lyonnais, S.A., 242 F.R.D. 199, 237 (E.D.N.Y. 2007) (internal citation and quotation marks omitted). "Substantial need is not evaluated in a vacuum, and in order to overcome work product protection, [the movant] must demonstrate that it cannot obtain

---

[5]As to opinion work product, "which shows the mental impressions, conclusions, opinions or legal theories of an attorney or other representative," the Second Circuit has held that "at a minimum, such material is to be protected unless a highly persuasive showing is made." United States v. Adlman, 134 F.3d 1194, 1204 (2d Cir. 1998). See also In re Grand Jury Proceedings, 219 F.3d 175 (2d Cir. 2000). The defendant has not argued that any of the items on the Amended Privilege Log are subject to this higher standard.

5

the substantial equivalent of the information it seeks." Sicurelli, 2006 U.S. Dist. LEXIS 29813 at *8. "Because the work product privilege does not protect the facts in that document (the privilege protects documents, not facts), the party seeking those facts may obtain them through other means of discovery, such as through depositions and interrogatories." Id., *9-10.

"Undue hardship does not mean that the movants must prove that obtaining the information elsewhere is absolutely impossible. . ." Strauss, 242 F.R.D. at 237 (internal citation omitted). All they must show is that "it is likely to be significantly more difficult, time-consuming or expensive to obtain the information from another source than from the factual work product of the objecting party." Id. "[A]lthough expense may be considered in determining undue hardship, in the ordinary case, the cost of one or a few depositions is not enough to justify discovery of work product." Sicurelli, 2006 U.S. Dist. LEXIS 29813, *10.

III. Discussion

The plaintiff's FELA claim requires him to prove:

> the traditional common law elements of negligence: duty, breach, foreseeability, and causation. At the same time, the plaintiff's burden in making a showing of causation and negligence is lighter under FELA than it would be at common law because the theory of FELA is that where the employer's conduct falls short of the high standard required of him by the Act and his fault, in whole or in part, causes injury, liability ensues. Thus, under FELA, an employer has a duty to provide its employees with a safe workplace,

6

> which it has breached if it knew or should have known
> of a potential hazard in the workplace, and yet
> failed to exercise reasonable care to inform and
> protect its employees. Accordingly, . . . an
> employer may be held liable under FELA for risks that
> would otherwise be too remote to support liability at
> common law.

Tufariello v. Long Island R.R., 458 F.3d 80, 87 (2d Cir. 2006) (internal citations and quotation marks omitted). Under this standard, it is apparent that investigations of how the accident occurred are relevant within the meaning of Fed. R. Civ. P. 26(b)(1). The condition of the equipment is also relevant, as are the plaintiff's medical records.

Having made a threshold determination that the discovery sought is relevant, the court turns to an item-by-item discussion of the disputed production requests and interrogatories to decide whether the materials on the privilege log are shielded from disclosure by the work product doctrine.

Production Request #9:

The court begins with the most hotly contested issue, which is the claimed work product protection of RRMI's reenactment the day after the accident. Plaintiff's Production Request #9 seeks, among other things, the production of all inspection, maintenance and repair records for the equipment involved in the accident. The plaintiff argues that Item #11 on the Amended Privilege Log, RRMI's Investigation Report, is responsive to this request and is not work product because it was not prepared in anticipation of

7

litigation. Plaintiff also argues that, even if the work product protection applies, he has substantial need for it and cannot obtain the equivalent information without undue hardship.

The defendant contends that the document was prepared in anticipation of litigation. The defendant argues that its counsel hired RRMI to conduct an investigation in anticipation of litigation.

The plaintiff argues that the investigation was not conducted in anticipation of litigation but for routine business purposes. He argues that the defendant investigates accidents as a routine matter in order to improve safety practices. Plaintiff has submitted deposition testimony suggesting that reenactments are "standard practice." (Pl's Second Suppl. Mem., Doc. #54, App. A at 18.)

A document is protected by the work product doctrine if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998) (internal citations and quotation marks omitted). A document does not lose protection simply because it was created both in anticipation of litigation and to assist with business decisions. Id.

The court concludes that the defendant anticipated

litigation immediately in this case.  The plaintiff was seriously injured, counsel was retained immediately, and counsel immediately retained RRMI for investigative purposes.  The defendant's in-house counsel affirms that RRMI is hired only when there is a strong likelihood that litigation will occur.  The court therefore finds that the investigative report was created in anticipation of litigation and is protected by the work product doctrine.

    The analysis does not end there, however.  The plaintiff contends that he has substantial need for the report because he cannot observe the boxcars as they were 24 hours after the accident and has no way of reenacting the accident with the same train cars and with the same loads contained on each car.  He also argues that it is impossible for him to inspect the actual boxcar to find out if it is defective.  The plaintiff has not, however, made a showing as to why any of that information is essential to his case, crucial to a liability determination or highly probative on contested issues.  See, e.g., Strauss v. Credit Lyonnais, S.A., 242 F.R.D. 199 (E.D.N.Y. 2007).  Plaintiffs frequently must prosecute their cases without access to information that might have been more readily available 24 hours after the incident.  The fact that the defendant happened to collect that information does not automatically entitle the

9

plaintiff to a copy of the defendant's work product.[6]

Even if the plaintiff could make a showing of substantial need, moreover, he has failed to demonstrate his inability to obtain the information from other sources without undue hardship. Although the plaintiff argues that the defendant is unable to produce the boxcar for testing purposes, there is no record as to any efforts made by the plaintiff to obtain it. Nor is there any evidence about any logistical or financial barriers to obtaining it. Most significantly, the plaintiff has not presented any evidence that he cannot obtain substantially the same information via interrogatories or by deposing individuals involved in the reenactment. Although the report is protected by the work-product doctrine, the facts contained in it are not protected. Because the plaintiff has failed to establish both "substantial need and the inability to obtain the substantial equivalent without undue hardship," Fed. R. Civ. P. 26(b)(3), item #11 of the defendant's Amended Privilege Log need not be disclosed as it is protected by the work product doctrine. Put another way, the plaintiff's motion to compel is granted as to Request #9 except for Amended Privilege Log item #11.

Production Requests #1 and #4:

The plaintiff's Production Requests #1 and #4 seek

---

[6]Of course, if the defendant or its experts intend to rely on the report at trial, they will have to disclose it. See Fed. R. Civ. P. 26(a).

production of documents relating to the plaintiff's medical records. The defendant objects to the requests to the extent that they seek production of items #3, 4, and 5 on the Amended Privilege Log, which are email discussions among the defendant, RRMI and counsel regarding the plaintiff's medical condition. The defendant argues that those items are work product because they were communications among the defendant's employees and RRMI employees created in anticipation of litigation. The plaintiff argues that the emails might instead constitute routine tracking of injured employees.

According to the Amended Privilege Log, items #3, 4, and 5 are dated between August 1, 2006 and October 10, 2006. The complaint was filed on August 23, 2006. In light of the court's conclusion that RRMI was hired in anticipation of litigation the day of the accident, the court finds that these emails also were created in anticipation of litigation and are therefore protected. Furthermore, the plaintiff cannot show substantial need for these items, as he has access to his own medical records.

The plaintiff's motion to compel is granted as to Production Requests #1 and 4, except that Items #3, 4 and 5 on the Amended Privilege Log are protected by the work product doctrine and need not be produced.

Production Requests # 13, 15 and 16:

These production requests seek, among other things, the trainmaster's complete file, any injury and accident investigative and inspection reports, and emails or memoranda pertaining to investigation of the accident. The defendant objects to these requests insofar as they seek production of items on the Amended Privilege Log. Specifically, it appears that items 1, 2, 6, 7, 8, 9, 11, 12, 13 and 14 on the Amended Privilege Log could be responsive. (The plaintiff's supplemental brief states, however, that he does not seek to compel item #14.) The Amended Privilege Log states that all of these items were generated by and/or exchanged among the defendant, its counsel and/or RRMI in anticipation of litigation. As such, and for the reasons previously discussed, the court finds that the items are protected by the work product privilege.

The plaintiff argues that he has substantial need as to documents 1, 11, 12 and 13 because they are based on observations made within a day after the accident. For the same reasons discussed above, the plaintiff has not established both "substantial need and the inability to obtain the substantial equivalent without undue hardship." Fed. R. Civ. P. 26(b)(3).

The plaintiff next argues that he has substantial need for the statement of Jim Rivers, item #8, because when plaintiff's counsel deposed Mr. Rivers, he did not recall certain details

such as what the train engineer told him about how the accident happened. The plaintiff speculates that Mr. Rivers might have had a better recollection when his statement was taken the day after the accident than he had when he was deposed.[7] Plaintiff has failed to explain, however, why the forgotten details are so crucial that the court should disregard the work product protection. Nor has the plaintiff made any showing that the information cannot be obtained from other sources.

To the extent that the plaintiff claims to have substantial need for other employees' witness statements taken shortly after the accident, he has not established that the information cannot be obtained by deposing the witnesses.

The plaintiff's motion to compel is granted as to Requests 13, 15 and 16, except that items on the defendant's Amended Privilege Log are protected by the work product doctrine and need not be produced.

Production Requests #28 and #30:

Plaintiff's Production Requests #28 and 30 seek, among other things, statements taken by the defendant including notes or memoranda about such statements. The defendant objects to these requests to the extent that they seek production of items 3, 4

---

[7] The defendant's second supplemental brief states that "[defense] counsel has examined Mr. Rivers's statement and can definitively represent to the court that Mr. Rivers['] statements mirror his deposition testimony." (Doc. #57 at 7.)

13

and 5 on the Amended Privilege Log, the emails concerning plaintiff's medical condition. The court has held that those items are protected by the work product doctrine.

The plaintiff's motion to compel is granted as to Requests 28 and 30, except that items on the defendant's Amended Privilege Log are protected by the work product doctrine and need not be produced.

Request #29:

Plaintiff's production request #29 seeks copies of any statements taken by the defendant. The defendant objects to the extent that these seek the witness statements listed as items 6, 7, 8 and 9 on the Amended Privilege Log. The court has already held that those items are protected by the work product doctrine and that the plaintiff has failed to establish substantial need for them.

The plaintiff's motion to compel is granted as to Request #29, except that items on the defendant's Amended Privilege Log are protected by the work product doctrine and need not be produced.

Interrogatory #7:

Plaintiff's interrogatory #7 asks the defendant to "identify and describe all inspections, maintenance and repairs made to the train car and equipment involved in the alleged accident and give the names, addresses, and job classifications of the persons

making each inspection" for two years before and one year following the accident.[8]

The defendant objects to this interrogatory insofar as it seeks production of items on the Amended Privilege Log. The court has held that the items on the Amended Privilege Log are protected by the work product doctrine and need not be produced.

However, this is not a request for production but an interrogatory. "The interrogatories seek facts, not documents or tangible objects, and the proper form of response is a narrative answer, not a reference to documents or objects where the answers might be found." In re Savitt/Adler Litig., 176 F.R.D. 44, 48 (N.D.N.Y. 1997). The work product doctrine protects documents, not facts. The defendant must therefore respond to this interrogatory and must "identify and describe" all inspections, including the ones conducted by RRMI.

The plaintiff's motion to compel is granted as to Interrogatory #7, except that any documents on the defendant's Amended Privilege Log need not be produced.

SO ORDERED at Hartford, Connecticut this 28th day of September, 2007.

                              _____/s/_____
                              Donna F. Martinez
                              United States Magistrate Judge

---

[8] The request originally sought information for a longer period, but the plaintiff has limited the request to this period.